

40 0005688

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **Angella Everett,** | § | |
| Plaintiff, | § | DEMAND FOR TRIAL BY JURY |
| | § | |
| v. | § | Civil Action No. **4-26 CV-150-0** |
| | § | |
| **NOVO PLATFORM INC.,** | § | VERIFIED COMPLAINT FOR DAMAGES |
| Defendant. | § | AND EQUITABLE RELIEF |

## VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Angella Everett ("Plaintiff"), appearing in propria persona, complains of Defendant

Novo Platform Inc. ("Novo" or "Defendant") and alleges:

## I. INTRODUCTION

1. Plaintiff, a former full-time remote employee working in Tarrant County, Texas, brings this action for disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and disability discrimination/retaliation under Texas Labor Code Chapter 21.

2. This case arises from Novo's adverse treatment of Plaintiff after she disclosed a traumatic brain injury and chronic migraines, requested flexibility for medically necessary absences and ADA paperwork, and attempted to engage HR in the accommodation process.

1



3. Novo demoted Plaintiff, subjected her to heightened scrutiny and discipline tied to medically documented absences, failed to engage in a good-faith interactive process, and later terminated Plaintiff while she was on approved long-term disability leave.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the ADA.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related Texas Labor Code Chapter 21 claims.

6. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff worked remotely from this District and a substantial part of the events giving rise to the claims occurred here.

## III. PARTIES

7. Plaintiff Angella Everett is a woman who resided and worked in Tarrant County, Texas during the relevant period.

8. Defendant Novo Platform Inc. is an employer within the meaning of the ADA (on information and belief, employing 15 or more employees) and conducts business in Texas, including employing remote workers located in this District. Defendant maintains offices including New York City (the primary source of Plaintiff's work direction) and Miami, Florida.

## IV. ADMINISTRATIVE EXHAUSTION

2

9. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

10. The EEOC issued a Dismissal and Notice of Rights dated August 18, 2025. Plaintiff received it on or about August 19–20, 2025.

## V. TIMELINESS, DILIGENCE, AND EQUITABLE TOLLING (PLEADED)

11. Plaintiff timely tendered her original federal complaint within the 90-day period following receipt of the EEOC Notice of Rights; Plaintiff's initial filing was postmarked November 17, 2025.

12. Plaintiff's prior federal action (Case No. 4:25-cv-01312-O-BP) was dismissed without prejudice for administrative reasons relating to an IFP deficiency and lack of timely notice caused by an address/notice issue outside Plaintiff's control, not on the merits of her discrimination claims.

13. Plaintiff promptly attempted to cure and sought reopening under Rule 60(b). The Court later declined to reopen and noted Plaintiff may file a second suit for claims dismissed without prejudice.

14. Plaintiff has pursued her rights diligently. To the extent Defendant disputes timeliness, Plaintiff pleads equitable tolling based on diligent pursuit and extraordinary circumstances affecting notice and the ability to cure administrative defects.

## VI. FACTUAL ALLEGATIONS

### A. Employment background and duties

15. Plaintiff began working for Novo in or about October 2021 as a contractor through JustWorks as a Customer Success Agent handling calls and customer tickets through the Novo application.

16. In November 2022, Plaintiff was hired full-time and promoted to Escalation Specialist (S4 level). Plaintiff was informed she would no longer be assigned to regular phone duty because call handling would be managed by Novo's BPO team in the Philippines and later by the "North Star" team for high-value account holders.

17. As an Escalation Specialist, Plaintiff handled complex, high-risk, and sensitive tickets requiring heightened diligence, including matters involving Novo's partner bank, Compliance and Legal departments, and management.

18. Beginning in 2023 and continuing thereafter, Novo assigned Plaintiff increasing responsibilities without a corresponding promotion, including: coaching BPO personnel on call performance; performing Compliance and Legal tasks; creating standard operating procedures ("SOPs"); serving as Checks subject-matter expert ("SME"); conducting training sessions; and continuing to manage escalation tickets.

19. Plaintiff consistently performed these expanded duties successfully.

**B. Performance recognition and compliance involvement**

20. In 2023, management praised Plaintiff's diligence and value and recommended her for a role in Novo's Compliance department, describing her as a strong fit and highly recommended.

4

21. A colleague also praised Plaintiff's SOP work and noted that management/director-level leadership was pleased with Plaintiff's performance.

22. Plaintiff was included in an internal Compliance email distribution group and routinely received compliance-related tickets and communications alongside designated Compliance staff, demonstrating Novo entrusted Plaintiff with compliance responsibilities.

**C. Disability, disclosure, and documentation**

23. Plaintiff has a disability within the meaning of the ADA, including a traumatic brain injury and chronic migraines, which substantially limit major life activities including concentrating, thinking, sleeping, and working during flare-ups.

24. Plaintiff disclosed her disability and limitations to management and Human Resources, including HR Generalist Janet Hefferan. Plaintiff explained that stress could increase migraine frequency and severity and worsen anxiety and depression symptoms.

25. Plaintiff sought treatment beginning in early 2024, including therapy, and obtained approved short-term disability ("STD") benefits and later long-term disability ("LTD") benefits.

**D. Accommodation requests and HR failures**

26. During Plaintiff's employment, Novo maintained and communicated an "unlimited PTO" policy and emphasized employees should not work while ill.

27. After Plaintiff's disability disclosures and medically necessary absences, Novo began treating the unlimited PTO policy as no longer applicable to Plaintiff and subjected Plaintiff to increased scrutiny and discipline tied to disability-related absences.

28. Plaintiff requested reasonable accommodations, including flexibility to take time off during migraine flare-ups and not to be penalized for medically necessary absences, and offered medical documentation (doctor's notes and treatment information).

29. Plaintiff sought protected-leave guidance, including whether she was eligible for FMLA leave; HR provided vague or no answers, including no clear response concerning employee-count eligibility.

30. Plaintiff requested ADA paperwork and accommodation guidance from HR on or about February 23, 2024 (email), and followed up via internal messaging on or about February 28 and February 29, 2024 after receiving no meaningful response. HR's communications were delayed and incomplete, including admissions reflecting internal communication failures (e.g., forgetting to send messages).

31. Novo failed to engage in a good-faith interactive process to identify and implement reasonable accommodations, and instead escalated scrutiny and discipline.

**E. Demotion and discriminatory/retaliatory discipline**

32. On or about mid-January 2024 (approximately January 17, 2024), Novo demoted Plaintiff from S4 to S3 without prior formal discipline consistent with such a demotion and without placing Plaintiff on a performance improvement plan ("PIP").

33. In early February 2024, Plaintiff was ill and absent from work from approximately February 1–2 and February 5–7, 2024.

34. Plaintiff returned to work on or about February 8, 2024 and provided two physician's notes dated February 2, 2024 and February 7, 2024 excusing the absences.

35. Despite Plaintiff's compliance with Novo's medical documentation requirements, Novo marked the absences "unexcused" and subjected Plaintiff to discipline, as reflected in internal attendance records (including entries marked "U" for unexcused).

36. Novo accused Plaintiff of "no call/no show" or job abandonment during this period and threatened termination, despite Plaintiff having notified a supervisor via internal messaging that she was ill and would provide documentation upon return; Novo did not meaningfully correct its characterization after receiving the notes.

37. Novo's treatment of medically documented absences as unexcused constituted discriminatory and retaliatory enforcement of attendance and performance standards.

**F. Hostile statements reflecting disability bias and retaliation motive**

38. During approximately January through early March 2024, HR and supervision—including Janet Hefferan and Lia Mebane—made statements to Plaintiff such as: "it seems you are not able to do this job," "your performance is declining," and "what makes you think your job is supposed to pay you just because you're sick. Nobody cares!"

39. These statements reflected hostility toward Plaintiff's medical condition and protected activity and were accompanied by escalating discipline and scrutiny.

**G. Unsupported "metrics" criticism, denial of training/support, and later metric reduction**

40. In a one-on-one meeting summary during the mistreatment period, Plaintiff's supervisor thanked Plaintiff for substantial contributions to additional major initiatives (including projects such as integrations and knowledge capture) while simultaneously criticizing Plaintiff's metrics and stating Novo would not provide additional training or resources beyond reading materials—despite Plaintiff not being placed on a PIP and while Plaintiff was performing significant work not captured by simple ticket counts.

41. Plaintiff was held to inflated productivity expectations while also performing special projects, training, SOP creation, and compliance/legal work, and Plaintiff was singled out for discipline during this period.

42. Shortly after Plaintiff began STD leave in early March 2024 (on or about March 5–6, 2024), Novo issued an internal announcement reducing expected productivity benchmarks due to workforce-wide inability to meet prior metrics and declining service quality.

43. Novo never retracted, corrected, or reconsidered disciplinary actions against Plaintiff based on the prior standards.

## H. Headset/equipment issues and inconsistent explanations

44. During the discipline period, HR communicated with Plaintiff about obtaining a headset (including delivery issues) and management referenced headset issues in connection with performance expectations.

45. Novo later claimed in its EEOC position statement that headsets were not required and that Plaintiff's claims regarding headset delays were unfounded; those assertions are

inconsistent with Novo's internal communications about ordering and discussing a headset for Plaintiff and referencing the issue in performance communications.

## I. STD/LTD leave and termination

46. After the February discipline and March meetings, Novo offered Plaintiff no meaningful accommodations, workload adjustments, metric modifications, or supportive measures, and maintained a "do better or else" posture.

47. Plaintiff reasonably perceived Defendant was attempting to build a disciplinary record to justify termination, despite Plaintiff having no prior disciplinary history before disability-related issues arose.

48. Plaintiff applied for STD leave in early March 2024 and did not return to work after approximately March 5–6, 2024 due to medical necessity.

49. Plaintiff later transitioned to LTD.

50. On or about November 15, 2024, while Plaintiff was on approved LTD leave, Novo terminated Plaintiff's employment.

## J. Post-termination conduct, waiver pressure, comparator evidence, and records access

51. Following termination, Novo presented Plaintiff with a severance offer of approximately $3,060 (before taxes) conditioned on waiving claims, including her EEOC charge.

52. Novo demanded return of Plaintiff's company equipment, while other employees were permitted to retain equipment upon separation, including a former teammate (Carrington Miller) terminated after Plaintiff who was permitted to keep his device(s).

53. Novo locked Plaintiff out of company systems/devices at or around termination, preventing access to work records relevant to her accommodation requests, communications, and performance—records that are in Defendant's possession, custody, and control.

**K. Damages and emotional distress**

54. Novo's actions caused Plaintiff economic harm including lost wages and benefits.

55. Novo's actions also caused Plaintiff significant emotional distress and exacerbated medical conditions, including increased stress, worsening migraines, and worsening anxiety and depression symptoms, requiring medical/therapeutic care and impairing Plaintiff's ability to function and work.

## VII. CAUSES OF ACTION

**COUNT I — ADA DISABILITY DISCRIMINATION (42 U.S.C. § 12112)**

56. Plaintiff incorporates paragraphs 1–55.

57. Plaintiff is disabled within the meaning of the ADA, and Novo knew of Plaintiff's disability.

58. Plaintiff was qualified to perform the essential functions of her position with or without reasonable accommodation, including resolving complex escalation tickets, coordinating with banking partners and compliance/legal departments, creating SOPs, training staff, serving as an SME, and handling compliance-related matters, as demonstrated by successful performance and expanded responsibilities.

59. Novo subjected Plaintiff to adverse employment actions, including demotion and termination.

60. Novo's adverse actions were taken because of Plaintiff's disability.

61. Plaintiff suffered damages as a result.

## COUNT II — ADA FAILURE TO ACCOMMODATE (42 U.S.C. § 12112(b)(5)(A))

62. Plaintiff incorporates paragraphs 1–55.

63. Plaintiff requested reasonable accommodations, including flexibility for migraine flare-ups/medically necessary absences and assistance with ADA paperwork and the accommodation process, and offered medical documentation.

64. Novo failed to engage in a good-faith interactive process and failed to provide reasonable accommodations, and instead disciplined Plaintiff for medically documented absences and treated Plaintiff as ineligible for flexibility made available to others.

65. Novo's failure to accommodate caused harm, including worsening symptoms and adverse employment consequences.

## COUNT III — ADA RETALIATION (42 U.S.C. § 12203)

66. Plaintiff incorporates paragraphs 1–55.

67. Plaintiff engaged in protected activity, including requesting accommodations, seeking leave/protected-leave guidance, and pursuing EEOC remedies.

68. Novo took materially adverse actions that would dissuade a reasonable worker from protected activity, including heightened scrutiny/discipline, demotion, termination while on LTD, and pressuring Plaintiff to waive her EEOC claim through severance conditions.

69. Novo's adverse actions were causally connected to Plaintiff's protected activity.

## COUNT IV — TEXAS LABOR CODE CHAPTER 21 (DISABILITY DISCRIMINATION & RETALIATION)

70. Plaintiff incorporates paragraphs 1–55.

71. Novo's conduct constitutes unlawful employment practices under Texas Labor Code Chapter 21, including discrimination because of disability and retaliation for protected activity.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award:

A. Back pay, front pay, and lost benefits;

B. Compensatory damages, including emotional distress damages;

C. Punitive damages where permitted by law;

D. Costs and reasonable attorney's fees if later represented;

E. Appropriate equitable relief; and

F. All other relief the Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## X. VERIFICATION

I, **Angella Everett**, declare under penalty of perjury, under the laws of the United States of America, that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 9th day of February, 2026.

Respectfully submitted,

All rights reserved. Without prejudice.

By:

_Angella Everett_

Angella Everett
Appearing in propria persona

Date: February 9, 2026

**Angella Everett**
1209 N. Saginaw Blvd. Ste G #145
Saginaw, Texas 76179
817.458.8353

Date: February 9, 2026

**Clerk of Court**
United States District Court
Northern District of Texas
Fort Worth Division

**Re: Pro Per Filing – VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
**(Demand for Trial by Jury)**

Dear Clerk of Court:

Please accept this letter as a cover submission for my pro per filing in the United States District Court for the Northern District of Texas, Fort Worth Division.

Enclosed for filing please find the following documents:

1. **Verified Complaint for Damages and Equitable Relief**, which includes a **Demand for Trial by Jury**

2. Civil Cover Sheet (JS-44)

3. Completed AO-440 Summons Form

4. Filing fee payment (money order)

I respectfully request that the Clerk open the case, assign a civil action number, and issue the summons.

Please advise if any additional information or documentation is required.

Thank you for your time and assistance.

By: Angella Everett
Angella Everett, in propria persona

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Angella Everett

## DEFENDANTS

NOVO PLATFORM INC.

**(b)** County of Residence of First Listed Plaintiff **Tarrant**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Angella Everett (in propria persona)
aevere04@gmail.com

Attorneys *(If Known)*

RECEIVED

FEB 1 2 2026

CLERK'S DISTRICT COURT
TOP TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12112; 42 U.S.C. § 12203

Brief description of cause:
Disability discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act and Texas Labor Code Chapter 21

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ >$75k

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE
February 9, 2026

SIGNATURE OF ATTORNEY OF RECORD
By: Angella Everett (in Propria Persona)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

*Extra copy

Please return to me
stamped after filing /issuing
case #(along w/Summons).
Enclosed is a self-addressed
stamped envelope. Please use
it to mail back!
                Thank you,
                    Angella Everett



**CERTIFIED MAIL**

 

*Retail*

U.S. POSTAGE PAID
PM
NOBLE, OK 73068
FEB 09, 2026

 76102

RDC 03

**$21.65**

S2324E501176-08

**UNITED STATES POSTAL SERVICE**®

PRIORITY MAIL

FROM:

Expected delivery date specified for domestic use.

Domestic shipments include $100 of insurance (restrictions apply).*

USPS Tracking® service included for domestic and many international d

Limited international insurance.**

When used internationally, a customs declaration form is required.

Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.

* See International Mail Manual at *http://pe.usps.com* for availability and limitations of cove

**UNITED STATES POSTAL SERVICE**® | **PRIORITY**® MAIL

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

RECEIVED
12 KS
FEB 2+ 2026
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

To schedule free Pa
scan the QR



USPS.COM/PICKUP

**TRACKED ■ INSURED**



PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2



PAPER POUCH

TO:

Clerk of the Court
U.S. District Court for the
Northern District of Texas
501 W. 10th Street, Room 310
Fort Worth, Texas 76102

Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.

400005682