**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

Angella Everett,
      Plaintiff,
v.
Novo Platform Inc.,
      Defendant.
Civil Action No. 4:26-cv-00150-O-BP

**Plaintiff's Brief in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss**

**Use of Generative Artificial Intelligence**

Portions of this brief were prepared with the assistance of generative artificial intelligence. The

undersigned has personally reviewed the brief, has independently verified its legal citations and

authorities, and is responsible for its contents in compliance with Federal Rule of Civil

Procedure 11.

**Table of Contents**

I. Introduction...................................................................................................................... 1

II. Standard of Review............................................................................................................2

III. The Ninety-Day Period Is Equitably Tolled, and Everett's Federal Claims Are Timely. 2

      A. The Limitations Defense Cannot Be Resolved Against Everett on the Pleadings. 3

      B. Everett Was Diligent, and Her Non-Receipt of the Court's Orders Was the Extraordinary Circumstance. 4

      C. The Moment She Learned of the Dismissal, Everett Acted — and the Court Directed Her to Refile. 5

      D. *Berry* and *Lambert* Confirm Tolling Here; They Do Not Bar It.....................................5

      E. The Date of Receipt Does Not Alter the Analysis. 6

IV. Everett Exhausted Her Claims, and Her Termination Is Reasonably Related to the Charge.......................................................................................................................................7

      A. Exhaustion Is Measured by the Investigation the Charge Would Reasonably Prompt. 7

      B. Everett's In-Charge Claims Are Exhausted — as Novo Concedes. 7

      C. The Termination Grew Out of the Charged Accommodation Dispute. 8

      D. At Most, Novo's Argument Narrows the Case; It Does Not Dismiss It. 9

V. Everett States Plausible Claims for Disability Discrimination, Failure to Accommodate, and Retaliation...................................................................................................................... 9

      A. The Standard Is Plausibility, Not Proof. 10

      B. Everett Pleads a Plausible Failure-to-Accommodate Claim. 10

      C. Everett Pleads a Plausible Disability-Discrimination Claim. 12

      D. Everett Pleads a Plausible Retaliation Claim. 14

      E. Novo's Motion Is, At Most, an Argument for Summary Judgment. 15

VI. Everett's Texas Labor Code Claims Track Her Federal Claims and Survive With Them........................................................................................................................................15

      A. The Chapter 21 Analysis Is the ADA Analysis. 16

      B. Everett Concedes Only the Demotion as a Stand-Alone State Claim — and the Demotion Otherwise Stays in the Case. 16

      C. The Court Retains Supplemental Jurisdiction Because the Federal Claims Survive. 17

VII. If Any Claim Is Dismissed, the Remedy Is Leave to Amend — Not Dismissal With Prejudice............................................................................................................................... 18

      A. Leave to Amend Is Freely Given, and the Substantial Reasons That Justify Denial Are Absent. 18

      B. Novo's Only Theory of Futility Is Its Timeliness Theory — and It Fails. 19

      C. Novo's Authorities Do Not Carry Futility Here. 20

**Table of Authorities**

**Cases**

*Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020) 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) 2, 10

*Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) 4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) 2

*Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) 5, 6

*Besser v. Tex. Gen. Land Office*, No. A-17-CV-1010-SS, 2018 WL 1353936 (W.D. Tex. Mar. 15, 2018) 15

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) 14, 15

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019) 9, 10, 13

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–07 (1999) 12

*Crews v. Dow Chem. Co.*, 287 F. App'x 410, 412 (5th Cir. 2008) 12

*EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) 11

*Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013) 10

*Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019) 7

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) 19

*Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) 8, 9

*Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023) (en banc) 20

*Holloway v. Archstone Dental-Hulen, PLLC*, No. 3:24-CV-2338-BK, 2025 U.S. Dist. LEXIS 11909 (N.D. Tex. Jan. 23, 2025) 20

*Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021) 11

*Lambert v. United States*, 44 F.3d 296, 298–99 (5th Cir. 1995) 4, 5, 6

*Luna-Acosta v. Tarrant Cnty. Coll. Dist.*, No. 4:25-CV-00008-O, 2025 U.S. Dist. LEXIS 227455 (N.D. Tex. Nov. 19, 2025) 18

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) 17

*Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) 7, 8, 13

*Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 369–70 (5th Cir. 2017) 8

*Phoneternet, LLC v. LexisNexis Risk Sols., Inc.*, No. 3:18-CV-1719-L, 2019 WL 4748271 (N.D. Tex. Sept. 30, 2019) 13

*Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006) 12

*Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) 7

*Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272–74 (5th Cir. 2013) 7, 9

*Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) 2, 3, 10

*Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) 19, 20

*Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 302 (5th Cir. 2014) 3

*Vaxter v. UPS*, No. 4:22-cv-00365-O-BP, 2022 U.S. Dist. LEXIS 235692 (N.D. Tex. Dec. 22, 2022) 4

**Statutes**

Tex. Labor Code Ann. § 21.202(a) 16

28 U.S.C. § 1367(a), (c)(3) 18

**Rules**

Fed. R. Civ. P. 12(b)(6) 2, 3, 9, 10, 19

Fed. R. Civ. P. 15(a)(2) 18

Fed. R. Civ. P. 41(b) 6

Fed. R. Civ. P. 60(b) 3

**I. Introduction**

Angella Everett filed on time. On the last day of the ninety-day window she placed her complaint in the mail to this Court, her correct address on the envelope and on the return-receipt card she signed by hand, and the Court received it within the limitations period. What ended that first action was not her neglect. The Court's orders never reached her — a cure deadline she never saw, and a dismissal she learned of only weeks later. The moment she learned, she acted: she moved to reopen, registered for electronic filing, and, when the Court directed her to a second suit, filed one and paid the $405 fee a second time. Eight hundred ten dollars, two filings, one set of claims — and a diligence the Court's own docket corroborates.

Novo now asks this Court to treat her non-receipt of those orders — a circumstance Everett neither caused nor could have cured — as a forfeiture of her claims. Equity and the pleadings counsel against that result: the Verified Complaint pleads equitable tolling, the docket this Court may judicially notice corroborates it, and a fact-bound tolling question cannot be resolved against a plaintiff at the pleading stage. (Section III.) The conduct at the heart of Everett's claims was charged and exhausted — Novo concedes as much — and her termination grew directly out of the charged accommodation dispute. (Section IV.) On plausibility, Novo lists the elements of a prima facie case and argues they are unproven; but that is the summary-judgment inquiry, and the Verified Complaint pleads, under penalty of perjury, facts that make each claim plausible. (Section V.) Her Texas Labor Code claims track the ADA framework Novo concedes governs both, and survive with the federal claims. (Section VI.) And Novo's request for dismissal with prejudice rests entirely on a futility theory that depends on its timeliness argument — so when timeliness fails, with-prejudice fails with it. (Section VII.)

This is a disability-discrimination case about an employee who disclosed a traumatic brain injury and chronic migraines, asked for the accommodations the law entitles her to seek, and was met with escalating discipline, a refusal to engage, and termination while she remained on approved medical leave. It deserves to be heard on its merits. The motion should be denied.

**II. Standard of Review**

To survive a motion under Rule 12(b)(6), a complaint need only plead facts that, accepted as true and viewed in the light most favorable to the plaintiff, state a claim that is plausible on its face. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when its factual content allows the reasonable inference that the defendant is liable; the plaintiff need not establish a prima facie case or prove anything at the pleading stage. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Two features of Novo's motion are governed by that posture. A limitations defense warrants dismissal only where the pleadings show the claim is barred *and* fail to raise any basis for tolling — and the Verified Complaint raises tolling expressly. (Section III.) And exhaustion under the ADA is not jurisdictional; it is a claim-processing prerequisite, evaluated on the same Rule 12(b)(6) standard that accepts Everett's well-pleaded allegations as true. (Section IV.) Where Novo's arguments depend on weighing competing inferences or resolving disputed facts, they ask for a judgment this Court cannot enter on the pleadings.

**III. The Ninety-Day Period Is Equitably Tolled, and Everett's Federal Claims Are Timely.**

Angella Everett filed on time. On November 17, 2025 — the last day of the ninety-day window — she mailed her complaint to the Clerk of this Court, her correct address printed on the envelope, on the cover letter, and on the return-receipt card she signed in her own hand.

(Verified Compl. ¶¶ 6–7; Everett Decl. ¶¶ 6–7; App. 7–8 (Ex. 2).) The Court received and docketed it on November 20, 2025, within the limitations period — as Novo concedes. (Br. 7.) What defeated that first action was not Everett's neglect. The Court's orders never reached her — and the Court's own docket reflects it.

**A. The Limitations Defense Cannot Be Resolved Against Everett on the Pleadings.**

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007). A limitations defense supports dismissal only "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Thompson v. Deutsche Bank Nat'l Tr. Co.,* 775 F.3d 298, 302 (5th Cir. 2014). Novo quotes the first half of that sentence and omits the second. (Br. 3.) The pleadings raise tolling. The Verified Complaint devotes a separate, captioned section to it — "Timeliness, Diligence, and Equitable Tolling (Pleaded)" — and alleges, under penalty of perjury, that Everett timely tendered her original complaint within the ninety-day period (¶ 11); that the First Action was dismissed because of "an address/notice issue outside Plaintiff's control, not on the merits" (¶ 12); that she "promptly attempted to cure and sought reopening under Rule 60(b)" (¶ 13); and that she "has pursued her rights diligently" and pleads "equitable tolling based on diligent pursuit and extraordinary circumstances affecting notice and the ability to cure administrative defects" (¶ 14). Whether equitable tolling applies is a fact-intensive question, and a verified complaint is competent evidence of the facts it states. Those facts, taken as true, raise a basis for tolling. Under *Thompson,* that forecloses dismissal on limitations grounds now.

3

**B. Everett Was Diligent, and Her Non-Receipt of the Court's Orders Was the Extraordinary Circumstance.**

Equitable tolling preserves a claim where "strict application of the statute of limitations would be inequitable." *Vaxter v. UPS*, No. 4:22-cv-00365-O-BP, 2022 U.S. Dist. LEXIS 235692, at *7 (N.D. Tex. Dec. 22, 2022). The Supreme Court has identified the circumstances in which it applies, among them where "a claimant has received inadequate notice" and where "the court has led the plaintiff to believe that she had done everything required of her." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984); *accord Lambert v. United States*, 44 F.3d 296, 298–99 (5th Cir. 1995). This is that case, and the proof is the Court's own docket, of which Novo requests judicial notice. (Br. 4 & n.1.)

The Court issued its Order and Notice of Deficiency (ECF No. 5) on November 24, 2025, and its Findings, Conclusions, and Recommendation (ECF No. 6) on December 15, 2025, setting a December 8 cure deadline. Everett received neither order. (Verified Compl. ¶ 12; Everett Decl. ¶¶ 9–12.) Believing her case still pending and having heard nothing, she telephoned the Clerk's Office on December 18, 2025 at 2:17 p.m. (Everett Decl. ¶ 13; App. 10 (Ex. 3).) The docket records what followed: at 3:27 p.m. that same day — roughly one hour later — the Clerk re-transmitted notice of delivery of *both* ECF Nos. 5 and 6. (First Action, docket entry of Dec. 18, 2025.) Neither order had been re-sent before that call; both were re-sent after it; and the docket reflects no order returned as undeliverable. The inference the record supports is that the Court's orders had not reached Everett and were re-transmitted once she brought the silence to the Clerk's attention.

A litigant cannot disobey an order she never received. Novo's assertion that Everett "did not pay the fee, did not file the long-form, did not seek an extension, and did not otherwise

4

respond" (Br. 8–9) describes someone who never saw the order requiring those steps. Her address was correct and unchanged throughout. (App. 7–8 (Ex. 2); Verified Compl. ¶¶ 6–7.) That is why none of this was of her making. This is the inadequate-notice circumstance *Baldwin County* describes — established not by argument, but by the Court's record.

The plaintiff in *Vaxter* "has not alleged any facts" of being misled or "prevented in some extraordinary way from asserting her rights," and tolling was denied on that basis. *Id.* at *7. Everett alleges the opposite — a tolling section pleaded under oath (¶¶ 11–14) and a docket showing the Court's orders never reached her. The same standard Novo invokes yields the opposite result here.

**C. The Moment She Learned of the Dismissal, Everett Acted — and the Court Directed Her to Refile.**

On or about January 12, 2026, Everett received the Court's correspondence and learned for the first time that the First Action had been dismissed. (Everett Decl. ¶ 15.) She did not delay. On January 21, 2026, she mailed a Motion to Reopen, tendered the $405 filing fee, and filed a Notice of Correct Address; both were docketed January 28, 2026 as ECF Nos. 9 and 10. (Everett Decl. ¶ 15; First Action, ECF Nos. 9–10.) On January 22, 2026, she completed registration for this Court's electronic filing system. (Everett Decl. ¶ 16; App. 12 (Ex. 4).) On February 3, 2026, this Court denied reopening — but in the order itself it told her that "[a] plaintiff may file a second suit for claims dismissed without prejudice," citing *Lambert*. (First Action, ECF No. 11.) Everett did precisely that. She mailed the present complaint on February 9, 2026; the Court filed it on February 12, 2026; and she paid the $405 fee a second time — $810 out of pocket to litigate a single set of claims. (Everett Decl. ¶ 17.) Each time action was required of her, she took it within days.

**D. *Berry* and *Lambert* Confirm Tolling Here; They Do Not Bar It.**

Everett does not dispute the general rule Novo invokes: the timely filing of a complaint later dismissed does not, standing alone, toll the ninety-day period. *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). That rule decides nothing here, because Everett does not rest on the mere pendency of the First Action. She rests on her non-receipt of the Court's orders — a circumstance *Berry* never addressed. *Berry* supports tolling here: the Fifth Circuit *reversed* the Rule 41(b) dismissal there as an abuse of discretion, because a dismissal that operates as a time-bar is an extreme sanction. *Id.* Novo's parenthetical — that *Berry* dismissed the plaintiff's claims with prejudice (Br. 8) — does not reflect the decision.

*Lambert* does not bar tolling here either. The order denying reopening cited *Lambert* in noting that Everett could file a second suit. (First Action, ECF No. 11.) *Lambert* denied tolling because the plaintiff had notice of his dismissal, possessed adequate remedies he never used — a good-cause showing, reconsideration, an appeal — and simply refiled. 44 F.3d at 298–99. Everett's circumstances are the inverse: she had no notice because she never received the orders, she pursued reopening the moment she learned, and when that was denied the Court itself directed her to a second suit as her remedy. The "adequate alternative remedy" *Lambert* requires was the refiling this Court identified — and Everett filed it. *Lambert* therefore does not bar Everett's refiling.

**E. The Date of Receipt Does Not Alter the Analysis.**

Exhibit 1 fixes Everett's receipt of the Notice of Right to Sue at August 18, 2025. (App. 4 (Ex. 1); Everett Decl. ¶ 4.) The Complaint's reference to "on or about August 19–20, 2025" (¶ 10) was an approximation, and nothing turns on it: under any of these dates the present action is

facially late, and tolling is required regardless. Everett does not contest facial untimeliness. The question is tolling — and on this record, tolling applies.

The Verified Complaint pleads a basis for tolling; the Court's own docket corroborates it; and the equities — a diligent litigant defeated by orders that never reached her, through no fault of her own — compel it. The motion should be denied as to limitations. At the very least, the fact-bound tolling question cannot be resolved against Everett on the pleadings.

**IV. Everett Exhausted Her Claims, and Her Termination Is Reasonably Related to the Charge.**

Novo's exhaustion argument reaches only part of the case, and even on that part it does not support dismissal. The conduct at the center of Everett's claims was charged and exhausted. Her November 2024 termination — the only act Novo's theory can plausibly touch — grew directly out of the disability-and-accommodation dispute her Charge described, and the scope question Novo raises cannot be resolved against her on the pleadings.

**A. Exhaustion Is Measured by the Investigation the Charge Would Reasonably Prompt.**

A suit under the ADA "may extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272 (5th Cir. 2013); *accord Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006). That inquiry is fact-intensive, and the charge is construed liberally because Title VII's procedures "were not designed for the sophisticated" and most charges are filed without counsel. *Pacheco*, 448 F.3d at 788–89. Exhaustion is not jurisdictional; it is a claim-processing prerequisite. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019). And at this stage the Court accepts Everett's allegations as true and draws every inference in her favor. *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

**B. Everett's In-Charge Claims Are Exhausted — as Novo Concedes.**

Everett's Charge, filed July 23, 2024, placed Novo and the EEOC on notice of the disability discrimination, failure to accommodate, and retaliation arising from her 2024 treatment: the change in her duties, the discipline imposed on medically documented absences, Novo's refusal to engage in the interactive process, and the hostile statements about her condition and her leave. (Verified Compl. ¶¶ 27–41; Def. App. 27–28 (Charge No. 520-2024-02399).) Each of those acts occurred on or before the Charge and falls within it. Novo does not argue otherwise — its exhaustion theory is expressly confined to events "July 24, 2024 or later." (Br. 5, 10.) The heart of Everett's failure-to-accommodate and discrimination claims is exhausted by Novo's own concession, and no part of it may be dismissed on exhaustion grounds.

**C. The Termination Grew Out of the Charged Accommodation Dispute.**

That leaves the termination. Novo calls it a discrete act requiring a separate charge. (Br. 6, citing *Phillips v. Caris Life Scis.*, 715 F. App'x 365 (5th Cir. 2017).) The argument fails on these facts and at this stage.

Everett's Charge complained that Novo refused to accommodate her disability and was hostile to the medical leave her condition required. Her termination was not a separate grievance — it was the end of that very leave. Novo fired her on November 15, 2024 while she remained on the approved disability leave that grew out of the charged accommodation dispute. (Verified Compl. ¶¶ 48–50.) An EEOC investigation into whether Novo unlawfully refused to accommodate Everett and resented her leave would reasonably reach Novo's decision to end her employment while she was on that leave. That is the scope *Pacheco* describes: the termination is the culmination of the charged conduct, not a stranger to it.

*Phillips* does not hold otherwise. It was decided on summary judgment, where the complaint was "devoid of any mention of the discrete acts" underlying the claim. 715 F. App'x at 369–70. Everett's Verified Complaint pleads the termination and ties it to the charged dispute. To the extent the termination is retaliatory, the Fifth Circuit has long held that retaliation growing out of an earlier charge need not be separately exhausted, *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981), although it has declined to extend that exception to claims pleading both discrimination and retaliation, *Simmons-Myers*, 515 F. App'x at 273–74. Everett need not invoke *Gupta*. She needs only the rule Novo concedes: whether the termination falls within the scope of an investigation reasonably expected to grow out of the Charge is a fact-bound question that, on a Rule 12(b)(6) record and a liberally construed Charge, cannot be resolved against her.

**D. At Most, Novo's Argument Narrows the Case; It Does Not Dismiss It.**

Novo asks the Court to dismiss the Complaint in its entirety. (Br. 16.) Exhaustion cannot deliver that. Even if the Court concluded the termination required a separate charge, the exhausted in-charge claims — discrimination, failure to accommodate, and retaliation through July 23, 2024 — survive untouched. The same analysis governs Everett's Texas Labor Code claims, which Novo concedes are evaluated under the identical framework. (Br. 11.) The motion should be denied as to exhaustion; at most it trims a single discrete act from a case that proceeds regardless.

**V. Everett States Plausible Claims for Disability Discrimination, Failure to Accommodate, and Retaliation.**

Novo lists the prima facie elements of three claims and argues each is unproven. (Br. 11–15.) But that is the summary-judgment inquiry, conducted on a developed record. It is not the

question before the Court. On a Rule 12(b)(6) motion the question is plausibility, and a plaintiff need not plead a prima facie case to survive. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019). The Verified Complaint pleads, in detail and under penalty of perjury, facts that make each claim plausible. Taken as true — as they must be — they defeat the motion.

**A. The Standard Is Plausibility, Not Proof.**

The Court accepts all well-pleaded facts as true and views them in the light most favorable to Everett. *Sonnier*, 509 F.3d at 675. A complaint survives if its factual content allows the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. What it need not do is establish each element of a prima facie case: the *McDonnell Douglas* framework is an evidentiary standard rather than a pleading requirement, and the Fifth Circuit has cautioned district courts against importing it into the Rule 12(b)(6) analysis. *Cicalese*, 924 F.3d at 766–67. Because the Texas Labor Code is analyzed under the same framework as the ADA — as Novo concedes (Br. 11) — the analysis below governs the Chapter 21 claims as well.

**B. Everett Pleads a Plausible Failure-to-Accommodate Claim.**

The elements are (1) a qualified individual with a disability; (2) the disability and its limitations were known to the employer; and (3) the employer failed to make reasonable accommodations. *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013). The Verified Complaint pleads each.

Novo knew. Everett disclosed her traumatic brain injury and chronic migraines, and their limitations, to management and Human Resources, including HR Generalist Janet Hefferan, and explained that stress increased her migraine frequency and severity and worsened her anxiety and depression. (Verified Compl. ¶¶ 23–24.)

10

She asked. Novo's claim that Everett offers "no specific factual support" (Br. 14) is refuted by her own pleading. Everett requested flexibility to take time off during migraine flare-ups and not to be penalized for medically necessary absences, and offered medical documentation. (¶ 28.) She sought protected-leave guidance, including FMLA eligibility, and received vague or no answers. (¶ 29.) She requested ADA paperwork and accommodation guidance by email on or about February 23, 2024, and followed up on February 28 and February 29 after receiving no meaningful response. (¶ 30.) These allegations identify dates, channels, and content; they are specific, not conclusory.

Novo failed to engage. Everett pleads that HR's communications were delayed and incomplete, including admissions that HR had forgotten to send messages (¶ 30), and that Novo failed to engage in a good-faith interactive process and instead escalated scrutiny and discipline (¶¶ 31, 64). An employer that fails to engage in the interactive process in good faith may be held liable when that failure causes the breakdown in identifying a reasonable accommodation. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

Novo relies on *Jennings*: because Everett was granted short-term and then long-term disability leave, it says, she received a reasonable accommodation as a matter of law. (Br. 14.) *Jennings* holds only that leave "can be" a reasonable accommodation — not that granting leave discharges every other duty. 11 F.4th at 344. Everett requested more than leave: flare-up flexibility, non-penalization of documented absences, and engagement on the ADA process itself. (¶¶ 28–30, 63.) Whether the leave Novo granted was an adequate response to those requests, and whether Novo's process failures caused the breakdown, are fact questions that cannot be resolved on the face of the pleadings. And Novo's position has a logical consequence: if the leave was the reasonable accommodation Novo provided, then Everett was a qualified

11

individual who could work with that accommodation — which forecloses the argument Novo makes next.

**C. Everett Pleads a Plausible Disability-Discrimination Claim.**

The elements are (1) a disability; (2) qualification for the position; (3) an adverse action because of the disability; and (4) replacement by or less favorable treatment than non-disabled employees. *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006).

Everett pleads she was qualified — expressly, and with particulars. She was qualified to perform the essential functions of her position with or without reasonable accommodation, including resolving complex escalation tickets, coordinating with banking partners and compliance and legal departments, creating SOPs, training staff, serving as a subject-matter expert, and handling compliance matters, as demonstrated by successful performance and expanded responsibilities. (¶ 58; see ¶¶ 21–22.) At the pleading stage, that is more than enough.

Novo answers with *Crews,* for the proposition that receipt of long-term disability benefits means an employee is not a qualified individual. (Br. 14.) *Crews* was decided on summary judgment, on a record in which the plaintiff's own physician repeatedly certified she could not return to work in the foreseeable future. 287 F. App'x at 412. There is no such record here, and the Court cannot resolve a well-pleaded qualification allegation against Everett on a motion to dismiss. The Supreme Court has squarely held that the receipt of disability benefits does not estop an ADA qualified-individual claim; any apparent inconsistency requires explanation and presents a fact question, not a ground for dismissal on the face of a complaint. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–07 (1999). The point is stronger here than in *Cleveland*: Everett's benefits were a private long-term disability policy, not a sworn representation of total disability to the Social Security Administration.

Everett pleads adverse action because of disability. After her disclosures and medically necessary absences, Novo treated its "unlimited PTO" policy as no longer applicable to her and subjected her to increased scrutiny and discipline tied to her disability-related absences. (¶ 27.) It marked medically documented absences "unexcused" despite physician's notes (¶¶ 34–35), demoted her, and terminated her while she was on approved leave, because of her disability. (¶¶ 59–60.) That the discipline was untethered to any genuine performance standard is plausible on the face of the pleading: within days of Everett's departure on leave, Novo issued a company-wide announcement reducing its productivity benchmarks because the workforce could not meet the prior metrics — the very metrics on which it had singled Everett out. (¶¶ 41–42.)

Everett pleads less favorable treatment. The unlimited-PTO policy Novo applied across its workforce it treated as no longer available to Everett once her disability-related absences began — disparate enforcement directed at her. (¶ 27.) At the pleading stage she need not identify a perfectly matched non-disabled comparator; the prima facie case is an evidentiary burden, not a pleading one. *Cicalese*, 924 F.3d at 766–67. That disparate enforcement, corroborated by Novo's differential treatment at separation — a former teammate, Carrington Miller, terminated after Everett, was permitted to keep his company device while Everett was required to return hers and was locked out of company systems (¶¶ 52–53) — makes discrimination plausible.

Novo's contrary arguments are merits disputes, not pleading defects. It says the Charge described the January 2024 change as being "placed back on phones" rather than a demotion, and invokes *Phoneternet* for the rule that a court need not credit allegations a complaint contradicts. (Br. 12–13.) But the Charge is a liberally construed administrative document, not part of the pleading whose internal consistency *Phoneternet* polices, *Pacheco*, 448 F.3d at 788–89; and a

13

lay description of being returned to the phones is not inconsistent with a demotion from S4 to S3 — it describes the same event. (¶ 32.) Novo's argument that no one knew of Everett's disability when she was demoted (Br. 12) likewise raises a fact question — Everett pleads disclosure to management and HR (¶ 24) and hostile, disability-focused statements beginning in January 2024 (¶ 38) — and in any event the discrimination claim does not rise or fall on the demotion, which is one adverse act among several.

**D. Everett Pleads a Plausible Retaliation Claim.**

The elements are (1) protected activity; (2) a materially adverse action — one that would dissuade a reasonable worker from engaging in protected activity, *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006); and (3) a causal link. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020).

Everett engaged in protected activity: she requested reasonable accommodations, sought protected-leave guidance, and filed and pursued an EEOC charge. (¶ 67.) Two adverse-action sequences follow, and either suffices at the pleading stage.

First, the in-charge sequence. Everett's accommodation request and leave-guidance inquiries were followed immediately by escalation Everett pleads in detail and which Novo, on this motion, must accept as true while disputing only its legal significance: increased scrutiny, the recharacterization of documented absences as unexcused, hostile statements about her condition, and intensified discipline. (¶¶ 27, 31, 35–39, 46.) That close sequence supports a plausible inference of causation, and the conduct was within the scope of the Charge. (See Section IV.)

Second, the charge-to-termination sequence. Everett filed her Charge on July 23, 2024; Novo terminated her on November 15, 2024 — under four months later — while she remained

on approved leave (¶ 50); and Novo then conditioned a severance payment on her release of that very Charge (¶¶ 51, 68).

Novo's response is *Besser,* for the proposition that the gap between protected activity and termination is too long to infer causation. (Br. 15.) *Besser* found temporal proximity and remarks about leave use, standing alone, insufficient to establish causation. Everett's claim does not rest on proximity alone. Novo also measures the gap from Everett's last day worked rather than from the pending Charge, but the termination occurred while the Charge was live, and the in-charge adverse treatment was contemporaneous with her requests. Everett does not anchor the retaliation claim on the January demotion, which predated her protected activity. The pleaded sequence and the charge-release pressure are enough to proceed.

Novo's suggestion (Br. 15 n.4) that a charge-release severance condition cannot be adverse addresses a claim Everett does not make: the conditioned severance is pleaded not as a stand-alone violation but as one of several materially adverse actions evidencing retaliatory animus (¶¶ 51, 68), and whether it would dissuade a reasonable worker is a fact question under *Burlington Northern,* 548 U.S. at 68 — not one resolvable on the pleadings.

**E. Novo's Motion Is, At Most, an Argument for Summary Judgment.**

At bottom, Novo's plausibility argument asks the Court to weigh competing inferences, resolve fact questions about knowledge and causation, and credit its characterization of the Charge over Everett's verified allegations. Those are the tasks of summary judgment on a developed record, not of a motion to dismiss. Accepting the Verified Complaint as true, each claim crosses from conceivable to plausible. The motion should be denied.

**VI. Everett's Texas Labor Code Claims Track Her Federal Claims and Survive With Them.**

Novo's state-law motion is largely resolved by its own concession. Novo concedes that Chapter 21 of the Texas Labor Code is construed in lockstep with the ADA and evaluated under the same framework. (Br. 11.) That concession resolves most of Novo's state-law argument: where the federal claims survive — and for the reasons set out in Sections III through V, they do — the state claims survive with them. What remains of Novo's state-law motion reaches a single discrete act, and only as a stand-alone theory.

**A. The Chapter 21 Analysis Is the ADA Analysis.**

Everett's Chapter 21 claims plead disability discrimination, failure to accommodate, and retaliation — the same wrongs, on the same facts, as her federal claims. (Verified Compl. ¶¶ 70–71.) Novo agrees they are governed by identical standards. (Br. 11.) Two consequences follow. First, the plausibility of the state claims is established by Section V, which applies to the Chapter 21 claims without modification. Second, Novo's state-law exhaustion argument merges into its federal one: Novo rests it expressly on "the same reasons discussed above" for the ADA claims. (Br. 10.) Section IV answered those reasons — the termination's relationship to the Charge is a fact-bound scope question that cannot be resolved on the pleadings, and the in-charge conduct is exhausted on Novo's own concession. By Novo's framework concession, the same result governs the state claims: at most the termination is trimmed as a stand-alone discrete act, and every in-charge Chapter 21 claim survives. Only one argument in Novo's state-law section is unique to it, and it is the narrow one addressed next.

**B. Everett Concedes Only the Demotion as a Stand-Alone State Claim — and the Demotion Otherwise Stays in the Case.**

Everett does not dispute that Chapter 21 required a charge within 180 days of the challenged practice. Tex. Labor Code Ann. § 21.202(a). She filed her Charge on July 23, 2024; the 180-day window therefore reaches back to January 25, 2024; and her January 17, 2024 demotion falls eight days outside it. (Verified Compl. ¶ 32.) Everett accordingly concedes her Chapter 21 claim to the limited extent it rests solely on the demotion, or on any other discrete act occurring before January 25, 2024.

The concession is narrow, and Novo may not enlarge it. It does not touch three things.

It does not touch the rest of the timeline. Every Chapter 21 claim premised on conduct from January 25, 2024 forward remains timely and live — the escalated scrutiny and discipline, the medically documented absences marked unexcused, the refused interactive process, the hostile statements about her condition and her leave, and the termination. (Verified Compl. ¶¶ 27, 31, 35–41, 48–50.)

It does not touch the demotion as a federal claim. Novo's 180-day bar is a creature of state law alone. The ADA's charge-filing window runs 300 days, and the demotion — 188 days before the Charge — sits comfortably within it. Novo has never argued the demotion is untimely under the ADA, and it is not. The demotion remains a federal discrimination predicate. (Verified Compl. ¶¶ 32, 59.)

It does not touch the demotion as evidence. A discrete act that is time-barred as an independent claim is not stricken from the record; it remains admissible as background evidence bearing on the timely claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The demotion is part of the pleaded sequence of disability-based hostility that Section V describes. Conceding it as a stand-alone state cause of action does not erase it from the proof.

The 180-day rule thus trims one discrete act, as a stand-alone state theory, from one of four counts. It dismisses nothing else.

**C. The Court Retains Supplemental Jurisdiction Because the Federal Claims Survive.**

Novo's fallback rests on a premise that is not true here. The rule Novo invokes is that courts "should generally decline to exercise supplemental jurisdiction over state-law claims when all federal claims have been dismissed." (Br. 11, quoting *Luna-Acosta v. Tarrant Cnty. Coll. Dist.*) That is the scenario Congress addressed in 28 U.S.C. § 1367(c)(3) — where "the district court has dismissed all claims over which it has original jurisdiction." It is not this scenario. Everett's federal claims survive for the reasons set out in Sections III through V; the federal and state claims arise from the same facts and form part of the same case or controversy, 28 U.S.C. § 1367(a); and the trigger for discretionary dismissal — the elimination of every federal claim — is absent. *Luna-Acosta* declined jurisdiction because the federal claims there had been dismissed. Everett's have not. The Court retains jurisdiction over the Chapter 21 claims.

Novo's state-law motion therefore reduces to the single, narrow concession Everett has already made. The Texas Labor Code claims proceed alongside the federal claims they mirror.

**VII. If Any Claim Is Dismissed, the Remedy Is Leave to Amend — Not Dismissal With Prejudice.**

Everett's position is that no claim should be dismissed; Sections III through VI explain why. This section addresses only Novo's fallback — its request that any dismissal be entered with prejudice. (Br. 16.) That request should be refused. Novo rests its entire futility argument on the premise that Everett's claims are "time-barred as a matter of law," and that premise fails. A

pleading that additional facts can cure is not futile, and a plaintiff who has never amended is entitled to the opportunity to try.

**A. Leave to Amend Is Freely Given, and the Substantial Reasons That Justify Denial Are Absent.**

Rule 15(a)(2) directs that courts freely give leave to amend when justice so requires. The Fifth Circuit permits denial only for a substantial reason — undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, or futility. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). None is present. This is Everett's first complaint in this action, and she has never once amended it. The First Action was dismissed on a notice-and-address defect, not on the merits, and never produced a Rule 12(b)(6) ruling on the sufficiency of her pleading. Novo identifies no delay, no bad faith, and no prejudice — the case stands at the pleading threshold, before any answer or discovery. And a plaintiff proceeding without counsel should ordinarily be afforded at least one opportunity to cure a pleading deficiency before her claims are dismissed with prejudice, unless it is clear the defect is incurable. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

**B. Novo's Only Theory of Futility Is Its Timeliness Theory — and It Fails.**

Novo concedes that leave to amend is often appropriate. (Br. 16.) It asserts futility on one ground alone: that Everett's claims are "time-barred as a matter of law" and that "no amendment can remedy those timeliness issues." (Br. 16.) Novo's futility theory rests on that timeliness premise alone, and it falls with it. The ninety-day period is equitably tolled, and the tolling question is at a minimum fact-bound and not resolvable on the pleadings. (Section III.) The exhaustion objection bars nothing and, at most, trims a single discrete act on a question that is

19

itself fact-bound. (Section IV.) The Texas claims survive on the same framework but for the narrow demotion sliver Everett has conceded. (Section VI.) Once the timeliness premise falls, the futility argument cannot stand.

Novo does not argue that its *plausibility* objection is incurable, nor could it: a complaint said to want for factual detail is the paradigm candidate for amendment, and Everett can plead additional factual particulars to answer any deficiency the Court identifies. Futility is not shown for a gap that more facts would fill.

**C. Novo's Authorities Do Not Carry Futility Here.**

*Stripling,* which Novo cites, sets out the freely-given standard and forecloses denial absent futility — and Novo has not established futility. *Holloway v. Archstone Dental-Hulen, PLLC* is an unpublished district-court order whose futility finding turned on the particular state-law claim before that court; it says nothing about the curability of Everett's claims. No. 3:24-CV-2338-BK, 2025 U.S. Dist. LEXIS 11909, at *6 n.3 (N.D. Tex. Jan. 23, 2025). And *Hamilton v. Dallas County*, which Novo cites for the proposition that dismissal with prejudice is appropriate, does not support it. *Hamilton* is the en banc decision that overruled decades of precedent to widen the field of actionable discrimination, holding that disparate treatment in the terms, conditions, or privileges of employment is actionable even without a discharge or tangible economic loss. 79 F.4th 494, 502 (5th Cir. 2023) (en banc). It reversed a dismissal; it does not authorize one with prejudice.

Should the Court find any claim insufficiently pleaded, the proper course is dismissal without prejudice and leave to amend. Everett respectfully requests that opportunity.

Respectfully submitted,

By: _Angella Everett_
Angella Everett, appearing in Propria Persona

1209 N. Saginaw Blvd., Ste. G #145
Saginaw, Texas 76179
Telephone: 817-458-8353
Email: aevere04@gmail.com

## Certificate of Service

I certify that on June 11, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve notice on all counsel of record, including counsel for Defendant Novo Platform Inc.

By: _Angella Everett_
Angella Everett